24-0370-cv
*United States v. 73DT Business Enterprises*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand twenty-five.

Present:

> AMALYA L. KEARSE,
> ROBERT D. SACK,
> EUNICE C. LEE,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.                                                                          No. 24-0370-cv

73DT BUSINESS ENTERPRISES, LLC, 73D BUSINESS BUREAU, INC.,

> *Claimants-Appellants,*

YOSEF MANELA,

> *Claimant,*

THE REAL PROPERTY AND PREMISES KNOWN AS 432 NORTH OAKLAND DRIVE, CONDOMINIUM UNIT 103, BEVERLY HILLS, CALIFORNIA 90210, AND ALL PROCEEDS TRACEABLE THERETO, THE REAL PROPERTY AND PREMISES KNOWN AS 432 NORTH OAKLAND DRIVE, CONDOMINIUM UNIT 203, BEVERLY HILLS, CALIFORNIA 90210, AND ALL PROCEEDS TRACEABLE THERETO, ANY AND ALL FUNDS ON DEPOSIT IN STIFEL NICOLAUS & CO. ACCOUNT NUMBER ENDING IN 9142, HELD IN

THE NAME OF 7D BUSINESS BUREAU INC., AND ALL PROCEEDS TRACEABLE THERETO, ANY AND ALL FUNDS ON DEPOSIT IN CITIZENS BUSINESS BANK ACCOUNT NUMBER ENDING IN 7135, HELD IN THE NAME OF 7D BUSINESS BUREAU INC., AND ALL PROCEEDS TRACEABLE THERETO,

Defendants.

_____

For Plaintiff-Appellee:

MADELINE M. O'CONNOR, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Central Islip, NY.

For Claimants-Appellants:

BRIAN A. JACOBS, Morvillo Abramowitz Grand Iason & Anello P.C., New York, NY.

Ryan P. Poscablo, Steptoe LLP, New York, NY.

Appeal from a March 25, 2024 order of the United States District Court for the Eastern District of New York (Irizarry, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Claimants-Appellants 7D Business Bureau, Inc. ("7D") and 73DT Business Enterprises, LLC ("73DT")[1] (together, "Claimants") appeal from an order of the district court entered on March 25, 2024, granting the government's motion to strike the claims filed in this civil forfeiture

---

[1] Though the correct name of this entity is "73DT Business Properties, LLC," we use "73DT Business Enterprises, LLC," as reflected on the notice of appearance filed in the district court and the docket sheet for the district court and this Court.

action pursuant to 28 U.S.C. § 2466, the fugitive disentitlement statute. In the underlying action, the government sought forfeiture of the assets contained in certain specified bank accounts as well as forfeiture of two condominiums located in Beverly Hills, California, along with their "leases, rents and profits therefrom, and all proceeds traceable thereto." *See* Compl. at 3, Dkt. 1, *United States v. Real Property & Premises Known as 432 N. Oakhurst Dr., Condo Unit 103*, No. 22-CV-7410, 2024 WL 1259430 (E.D.N.Y. Mar. 25, 2024). According to the government, Andrii Derkach and Oksana Terekhova owned these assets through a multi-tiered structure of corporate entities, including 7D and 73DT, which allowed them to evade sanctions imposed by the United States against Derkach by obscuring their ownership in the assets.

The district court found that "all prerequisites for fugitive disentitlement [were] satisfied" as to both Derkach and Terekhova and exercised its discretion to strike 7D's and 73DT's claims. *Real Property & Premises Known as 432 N. Oakhurst Dr.*, 2024 WL 1259430, at *6. On appeal, the Claimants argue that Derkach has no current interest in the forfeited assets; that the government did not meet its burden of proof for the elements of the fugitive disentitlement statute as to Terekhova; and that the district court abused its discretion by not conducting a discretionary analysis under the fugitive disentitlement statute as to Terekhova. For the reasons described below, we disagree.

## BACKGROUND

In September 2022, Andrii Derkach was charged with (1) conspiracy to violate the International Emergency Economic Powers Act (IEEPA); (2) bank fraud conspiracy; (3) money laundering conspiracy; and (4) engaging in monetary transactions in property derived from specified unlawful activity. *See* Indictment, Dkt. 3, *United States v. Derkach*, No. 22-CR-432

3

(E.D.N.Y. Sept. 26, 2022). Months later, the government filed a superseding indictment that charged Derkach's then ex-wife, Oksana Terekhova, as engaging in the same crimes. *See* Superseding Indictment, Dkt. 9, *United States v. Derkach*, No. 22-CR-432 (E.D.N.Y. Jan. 23, 2023). As pertinent to this appeal, pursuant to the Civil Asset Forfeiture Reform Act of 2000's fugitive disentitlement statute, 28 U.S.C. § 2466, the government filed a verified civil forfeiture complaint (the "Complaint") seeking forfeiture of four properties relating to the underlying criminal charges: two condominiums in California, funds in an account with investment firm Stifel Nicolaus & Co., and funds in an account with Citizens Bank (collectively, the "Defendants *In Rem*").

The fugitive disentitlement statute aims to prevent criminal defendants facing "both incarceration and forfeiture for [their] misdeeds" from "invok[ing] from a safe distance only so much of a United States court's jurisdiction as might secure [them] the return of alleged criminal proceeds while carefully shielding [themselves] from the possibility of a penal sanction." *United States v. Technodyne LLC*, 753 F.3d 368, 377 (2d Cir. 2014) (quoting *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004)). In service of this goal, the fugitive disentitlement statute "confers upon a court the discretion to bar certain individuals or entities from raising claims contesting civil forfeiture actions." *Id.*; *see also* 28 U.S.C. § 2466. Before a court can exercise its discretion to bar an individual from contesting a forfeiture action, however, it must determine whether five prerequisites to disentitlement are met:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the

claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Collazos*, 368 F.3d at 198 (citing 28 U.S.C. § 2466).

In the instant case, the government alleged that in September 2020, the U.S. Department of Treasury's Office of Foreign Assets Control sanctioned Derkach—a former member of the Ukrainian Parliament's Party of Regions, a pro-Russian political party—and added him to the Treasury Department's Specially Designated Nationals and Blocked Persons ("SDN") List pursuant to Section 2(a) of Executive Order 13848 ("E.O. 13848") and its implementing regulations. *See* E.O. 13848, 83 Fed. Reg. 46843 (Sept. 12, 2018) (declaring a national emergency to address the threat posed by foreign interference in United States elections under the authority of, *inter alia*, IEEPA); 31 C.F.R. §§ 579.201 n.1, 579.301 n.1, 579.406 (providing that individuals on the SDN List who own a 50 percent or greater interest in a property "directly or indirectly" are blocked from such property). By adding Derkach to the SDN List, then, the Office of Foreign Assets Control blocked his ownership interest in property that he directly or indirectly owned in the United States. *See* E.O. 13848 (explaining that when individuals are blocked from their property, that property "may not be transferred, paid, exported, withdrawn, or otherwise dealt in").

With respect to the Defendants *In Rem*, the Complaint alleges that in or about 2013, Derkach and Terekhova purchased the condominiums through the Claimants—two shell companies, with the letters "DT" in "73DT" correlating to Derkach and Terekhova—all while concealing Derkach's interest in the transactions from U.S. financial institutions. The Complaint

5

additionally alleges that in 2015 and 2016, at the direction of Derkach and Terekhova, U.S.-based financial services professional Yosef Manela opened an account with investment firm Stifel Nicolaus & Co. on behalf of 7D. In doing so, Manela listed himself as the "'Secretary,' 'President,' and 'Sole Officer' of 7D" on the account paperwork. App'x at 26. Between September and October 2015, more than half a million dollars were transferred into the Stifel account. Funds from the Stifel account were in turn transferred to a business checking account at Community Bank,[2] which Manela opened in the name of 7D as its "Secretary."[3] App'x at 26. About $95,000 per year from the account at Community Bank was then used to make payments for the maintenance of the two condominiums. Even after the Office of Foreign Assets Control added Derkach to the SDN List, Manela continued to make transactions from the two accounts.

After the government filed the Complaint, the Claimants appeared in the action and asserted ownership claims on the Defendants *In Rem* based on their interests in the accounts at Stifel and Citizens (formerly Community) Bank and the condominiums. In response, the government moved to strike the claims. The Claimants filed an opposition to the motion to strike and moved to dismiss the Complaint for failure to satisfy the heightened pleading requirements that apply to civil forfeiture actions. In their opposition to the motion to strike, Claimants argued that Derkach had no interest in the forfeited assets because he and Terekhova divorced in 2020; that the government failed to meet its burden of proof on the elements of the fugitive disentitlement statute as to Terekhova; and that even if the government did meet its burden of proof for the

---

[2] In or around 2018, Citizens Bank acquired Community Bank, and so this account is referred to as the "Citizens Account" throughout the case.

[3] Indeed, none of the account paperwork for either of the accounts acknowledged Derkach or Terekhova as having any ownership interest in or affiliation with 7D or the accounts.

elements of the fugitive disentitlement statute as to Terekhova, the district court should nonetheless exercise its discretion under that statute to decline to strike the claims.

The district court found that the elements of the fugitive disentitlement statute were met as to both Derkach and Terekhova; though it is undisputed that Terekhova is the ultimate beneficial owner of the assets claimed by the Claimants, Derkach also "had and continues to have an interest in" the assets, and thus Derkach, who is on the SDN list, and Terekhova had "joint control over" the assets for purposes of the fugitive disentitlement inquiry. Special App'x at 6–7. As a result, the district court reasoned that it was within its discretion to disentitle the assets and chose to do so.[4] This timely appeal from the Claimants followed.

## DISCUSSION

This Court reviews de novo the legal applicability of the fugitive disentitlement statute. *Technodyne LLC*, 753 F.3d at 378. Once it is established that the statute applies, the government "bears the burden of establishing the factual prerequisites laid out in th[e] statute," *id*. at 381, by a preponderance of the evidence, 18 U.S.C. § 983(c). Courts have "discretion to make the findings required by [the fugitive disentitlement statute] on the basis of the parties' presentations" and to consider the totality of the circumstances in determining fugitive status. *Technodyne LLC*, 753 F.3d at 381–82, 387. This Court "review[s] the district court's decision to order disentitlement for abuse of discretion." *Id.* at 378 (quoting *Collazos*, 368 F.3d at 195). "An abuse of discretion may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a

---

[4] The district court did not address Claimants' motion to dismiss, in which Claimants argued that the Complaint failed to state a forfeiture claim. But the district court was not required to address the merits of the motion to dismiss because Derkach and Terekhova "waived [their] right to be heard in the civil case when [they] refused to submit to state and federal jurisdiction in [a] related criminal case[]." *Collazos*, 368 F.3d at 192.

decision that cannot be located within the range of permissible decisions." *Id.* (quoting *SEC v. Razmilovic*, 738 F.3d 14, 25 (2d Cir. 2013)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Otal Invs. Ltd. v. M/V CLARY*, 673 F.3d 108, 113 (2d Cir. 2012).

As a threshold matter, Claimants argue that the district court abused its discretion in erroneously finding that Derkach has a joint ownership interest in the Claimants and the Defendants *In Rem*, especially in light of his divorce from Terekhova in February 2020.[5] We disagree.

The district court cited persuasive evidence to support its finding that Derkach had and continues to have a joint interest in the Defendants *In Rem*. As it explained, Derkach met with Manela four times between 2013 and 2017 and "conveyed the impression that he had decision making authority" regarding the condominiums at issue. Special App'x at 7; *see also* App'x at 29 (verified complaint alleging "Derkach appeared to have 'veto power' over any decision" regarding the assets, and he "reviewed financial statements, including the costs associated with the . . . [c]ondominiums and the performance of the investments made with the remaining funds [in the accounts Manela opened]"). Moreover, Derkach and Terekhova's daughter stated "to numerous third parties," including employees at the building where both condominiums are

---

[5] On appeal, Claimants do not challenge whether Derkach is a "fugitive" under the fugitive disentitlement statute. Thus, to the extent that the district court properly concluded that Derkach had a 50 percent ownership in the Defendants *In Rem*, the statute's regulations permit disentitlement of the property regardless of whether the elements are met as to Terekhova. *See* 31 C.F.R. § 579.406 (stating that if an individual on the SDN List owns a 50 percent or greater interest in an entity, the "property and interests in property" of that entity are also blocked). Claimants do not dispute this on appeal, either.

located, that Derkach was an owner of the condominiums but that "her living situation and finances were structured to avoid implicating [Derkach] or sanctions." App'x at 29; Special App'x at 7. Lastly, as the district court noted, the Complaint also alleges that Derkach and Terekhova "viewed potential properties together before purchasing" them, and that they only started obscuring their identities after a bank declined to open an account for them due to Derkach's status as a politically exposed person. Special App'x at 5. Considering the totality of the circumstances, the district court did not abuse its discretion in concluding that Derkach had and continues to have joint interest in the Defendants *In Rem*.

The fact of Derkach's divorce from Terekhova does not disturb this conclusion. Evidence in the record demonstrates that "Derkach and Terekhova's younger daughter stated, in sum and substance," that the divorce was a sham meant to protect Derkach's assets from sanctions. App'x at 195. Though Claimants argue that Derkach and Terekhova's daughter's statement is hearsay, it is admissible hearsay. *See* Fed. R. Evid. 803(19) (providing that hearsay is admissible if it relates to a person's "reputation concerning personal or family history," including their "marriage" or "divorce"). Thus, the district court did not err in relying on it to conclude that Derkach and Terekhova's divorce was indeed a sham. But even if the divorce was not a sham, the divorce decree does not make mention of any assets or property interests, let alone the distribution thereof, and so the divorce provides no evidence as to whether Derkach was divested of his interest in the assets as a result of the divorce. Moreover, as it relates to the condominiums specifically, in December 2020, nearly a year after the divorce, the listed representatives of the condominiums included Derkach's parents and Derkach and Terekhova's children, suggesting that Derkach maintained a vested interest in the properties and their maintenance.

9

In light of the foregoing, this Court is not "left with the definite and firm conviction" that the district court erred, given the evidence in the record that supports the district court's factual finding that Derkach had joint ownership interest in the Defendants *In Rem*. *Otal Invs. Ltd.*, 673 F.3d at 113; *see also* 31 C.F.R. § 579.406. As a result, this Court will not disturb the district court's findings. And because Claimants fail to address on appeal whether the prerequisites for fugitive disentitlement are met as to Derkach, thus forfeiting any argument to the contrary, *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004), we conclude that the district court did not abuse its discretion in granting the government's motion to strike.

Even if Derkach did not have an interest in the Defendants *In Rem*, this Court would still affirm on the basis that the district court correctly concluded that the elements of the fugitive disentitlement statute are met as to Terekhova. On appeal, Claimants challenge whether the government met its burden as to three of the five elements of the fugitive disentitlement statute—namely, (1) whether Terekhova is deliberately avoiding the jurisdiction of the United States, (2) whether she is confined elsewhere, and (3) whether she has knowledge of the indictment against her. As the district court explained, however, there was sufficient evidence in the record as to each of these points. *See* Special App'x at 8–14. Because the district court's conclusion was supported by evidence, again, this Court cannot find that the district court abused its discretion. *Technodyne LLC*, 753 F.3d at 378. Indeed, contrary to Claimants' argument that the district court failed to conduct a discretionary analysis, the district court properly exercised its discretion in granting the motion to strike the claims after it found that the elements of the fugitive disentitlement statute were met as to both Derkach and Terekhova.

\*   \*   \*

We have considered the Claimants' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court